JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Antoinette M. Temple, appeals from the judgment of the Common Pleas Court granting the motions for summary judgment of defendants-appellees, Fence One, Inc. ("Fence One"), Electro-Analytical, Inc. d/b/a EA Group Laboratories "(EA Group"), ISK Biocides, Inc. ("ISK Biocides"), and Ozark Timber Treating, Inc. ("Ozark Timber"). For the reasons that follow, we affirm.
 {¶ 2} Temple originally filed this action on April 29, 2002, claiming numerous physical injuries as a result of alleged exposure to chemicals from an outdoor wood fence erected on the property of a neighbor who lives two houses away from her. The case was voluntarily dismissed and refiled in October 2003.
 {¶ 3} In her refiled complaint, Temple named as defendants:
 {¶ 4} 1. Alan and Gloria Komar, the owners of the property where the fence was erected and installed;
 {¶ 5} 2. Fence One, the entity that erected and installed the fence on the Komars' property; {¶ 6} 3. Ozark Timber, the manufacturer of the treated wood for the fence;
 {¶ 7} 4. ISK Biocides, the supplier of the wood preservative used to treat the fence; and
 {¶ 8} 5. EA Group, a scientific testing agency that was retained by ISK Biocides to provide testing for Temple on the Komars' fence.
 {¶ 9} Temple alleged claims for nuisance, negligence, recklessness and fraud in her complaint. She claimed that "from the outset, the [Komars'] fence was unsafe in that it allowed arsenic, chromium, copper, creosote and other dangerous chemicals to escape from the fence into the ground and into the air" causing "serious and permanent injuries to Temple and her property."
 {¶ 10} The record reflects that Temple first experienced symptoms of multiple chemical sensitivity ("MCS") in 1988 when she was exposed to zinc chloride from the furnace in a home that she owned in Indiana. She currently complains of MCS and other disabilities, which include vascular disorder, peripheral neuropathy, cellulitis, diabetes, hemorrhaging of leg veins and anemia.
 {¶ 11} The record further indicates that this is not Temple's first lawsuit stemming from her MCS; she has filed numerous lawsuits against former landlords and property owners as a result of alleged exposure to various harmful chemicals in apartments and homes she formerly lived in.
 {¶ 12} Temple purchased her home at 6179 Stratford Drive, Parma Heights, Ohio in December 1997. The home is on a small lot and is surrounded on all sides by neighbors. When she moved in, Temple did not advise any of her neighbors of her alleged MCS.
 {¶ 13} In November 1998, the Komars, who live two houses away from Temple, contracted with Fence One to install a wooden fence surrounding their yard. The wood components of the yellow pine wood fence were manufactured by Ozark Timber and sold to Fence One.
Prior to selling the wood to Fence One, Ozark Timber treated it with copper naphthenate, purchased from ISK Biocides, to retard fungi and insects and enhance the durability of the fence. Ozark Timber does not use any other wood treatment process other than copper aphanites; it does not treat wood with chromium, nor does it use arsenic in its treatment process. Ozark Timber does not treat wood with chromated copper arsenate, also known as CCA. Copper napthenate has been used as a wood preservative for well over 100 years. Neither Ozark Timber nor Fence One has ever had any prior complaints regarding any physical symptoms allegedly related to copper napthenate exposure.
 {¶ 14} After purchasing the wood from Ozark Timber, Fence One did not apply any other chemical to the fence before it was installed in the Komars' yard. The independent contractor hired to install the fence dug holes, installed vertical posts in the holes, and secured vertical slats and horizontal stringers to the fence posts to complete the fence.
 {¶ 15} Shortly after the fence was installed, Temple began complaining that she was experiencing an aggravation of her MCS, as well as several other conditions that she alleged were caused when "vapors" from the fence traveled into her home through her furnace. No one in the Komar family has experienced any adverse effects as a result of the fence, nor have they heard any complaints other than Temple's related to the fence.
 {¶ 16} Temple contacted Fence One, who provided her physicians with a material safety data sheet ("MSDS") supplied by Ozark Timber. Temple then contacted ISK Biocides and requested the MSDS and label for the wood preservative that was sold to Ozark Timber.
ISK Biocides complied by providing the MSDS and label for Perm-E-8%, the trade name for the wood preservative sold to Ozark Timber.
 {¶ 17} In light of Temple's allegations that she was experiencing ill effects from the Komars' fence, in January 1999, ISK Biocides retained Alley Associates (not a party to this lawsuit) to investigate Temple's complaints. In turn, Alley 
Associates hired EA Group, an environmental consulting firm and laboratory, to obtain air and wipe samples near the fence and within Temple's home and to perform laboratory analysis for volatile organic compounds, copper and arsenic.
 {¶ 18} On February 4, 1999, EA Group sent one of its certified industrial hygienists to conduct the field investigation and take samplings. The field investigation included obtaining information from Temple, recording observations, taking air samples near the fence and in Temple's home, and taking wipe samplings at various locations in her home. The wipe samplings were tested for copper and arsenic; the air samplings were tested for copper, arsenic and toxic organic compounds. An analysis of the samplings was then conducted at EA Group's AIHA accredited laboratory.
 {¶ 19} On February 19, 1999, EA Group provided a summary report of its findings and analysis to Alley Associates. The test results found no detectable concentrations of arsenic and very low levels of copper at each of the sampling locations. In light of its investigation and analysis, EA Group reported that "there is no conclusive evidence showing a link between the existence of the fence and the symptoms exhibited." Alley 
Associates forwarded the report to ISK Biocides, who then shared it with Temple.
 {¶ 20} On March 24, 1999, Temple sent an eight-page letter to ISK Biocides challenging and rebutting large portions of the EA Group report. Thereafter, EA Group sent a point-by-point response to Temple's rebuttal to Alley Associates.
 {¶ 21} After Temple filed suit in 2002, the defendants collectively retained D. Pascal Kamdem, Ph.D., a professor of wood science and technology at Michigan State University, to perform a chemical analysis of the Komars' fence to identify and analyze the presence and amount of copper, chromium and arsenic in the wood and soil. On July 8, 2003, Dr. Kamdem inspected the fence and collected samples of the wood and soil near the Komars' fence. He also reviewed the MSDS for Perm-E8%. Using atomic absorption spectroscopy and applying the standards of the American Wood Preservers Association, he opined that the fence was treated with copper napthenate, but "the lumber and posts from the wood fence were not treated with wood preservatives containing arsenic and/or chromium."
 {¶ 22} In February 2004, the trial court issued a case management order in the case, ordering that Temple's expert reports were to be submitted by May 14, 2004 and defendants' expert reports were due July 16, 2004. Later, the trial court granted a motion to extend the production of defendants' expert reports to September 30, 2004 and the dispositive motion deadline to October 15, 2004.
 {¶ 23} Temple subsequently dismissed the Komars from the lawsuit. Thereafter, the trial court permitted Temple's counsel to withdraw from the case and Temple proceeded in this matter pro se.
All defendants subsequently filed motions for summary judgment. After Temple filed briefs in opposition to the defendants' motions for summary judgment, all defendants joined in a motion to strike various affidavits and expert reports attached to Temple's opposition brief. Defendants argued that the affidavits and expert reports were produced after the court-ordered deadline. The trial court granted all of the defendants' motions for summary judgment without ruling on the motion to strike.
 {¶ 24} Temple now asserts that the trial court erred in granting summary judgment in favor of each defendant because issues of fact on each of her claims preclude summary judgment.
 SUMMARY JUDGMENT STANDARD {¶ 25} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997),77 Ohio St.3d 421, 430. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1998), 38 Ohio St.3d 112. Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. Any doubts must be resolved in favor of the non-moving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,358-359.
 TEMPLE'S EXHIBITS TO HER BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT {¶ 26} All defendants argue on appeal that this court should not consider the majority of Temple's exhibits attached to her briefs in opposition to the defendants' motions for summary judgment, because they do not comply with the requirements of Civ.R. 56(C), which allows the court to consider only "pleadings, depositions, answers to interrogatories, written admission, affidavits, transcripts of evidence and written stipulations provided in the case" when ruling upon a motion for summary judgment. The defendants also argue strenuously that this court should not consider the expert reports attached to Temple's brief in opposition because they were submitted after the court-ordered deadline of May 14, 2004.
 {¶ 27} The record reflects that the trial court did not rule on the defendants' joint motion to strike various affidavits and expert reports from Temple's brief in opposition. Because the court did not rule on the motion, we must presume that it denied the motion. Vandenhaute v. Filer, Cuyahoga App. No. 80405, 2002-Ohio-3640, at n. 3, citing Georgeoff v. O'Brien (1995),105 Ohio App.3d 373, 378.
 {¶ 28} Accordingly, Temple's expert reports are properly before this court for review.[1] Nevertheless, we need not reach the issue of whether Temple's expert reports create a genuine issue of material fact regarding a causal connection between the fence and Temple's alleged injuries because, as discussed below, Temple's claims fail for other reasons.
 TEMPLE'S CLAIMS AGAINST OZARK TIMBER {¶ 29} In her complaint, Temple alleged that "the installation and erection of the fence" constituted negligence, nuisance and recklessness. It is undisputed that Ozark Timber did not install or erect the fence. Rather, Ozark Timber was the manufacturer of the treated wood which was used in building the fence. Temple does not dispute that Ozark Timber was neither responsible for the erection nor the installation of the fence. As such, Temple's claims of negligence, nuisance and recklessness are not applicable nor relevant to Ozark Timber. Moreover, even if she had pled negligence, nuisance, or recklessness claims against Ozark Timber, Temple failed to adduce any set of facts to establish such claims.
1. Negligence
 {¶ 30} To establish actionable negligence, one must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom. Mussivand v. David (1989),45 Ohio St.3d 314, 318. Generally, the existence of a duty in a negligence action is a question of law for the court to determine. Id.
 {¶ 31} Ohio recognizes the general rule that "it is the duty of the manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended."Temple, supra, at 323.
Whether a duty exists in a particular situation depends upon the foreseeability of an injury. Commerce Industry Ins. Co. v.Toledo (1989), 45 Ohio St.3d 96, 98. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Menifee v. OhioWelding Products, Inc. (1984), 15 Ohio St.3d 75, 77.
 {¶ 32} Here, Temple failed to produce any evidence demonstrating that it was foreseeable that installation of a wood fence treated with copper napthenate on property two houses away from hers would cause injury to her. Copper napthenate has been used as a wood preservative for well over 100 years. Ozark Timber does not treat wood with arsenic, chromium or creosote and Dr. Kamden's testing does not reveal the presence of arsenic or chromium in the wood. Ozark Timber has never had any prior complaints regarding any physical symptoms allegedly related to copper napthenate exposure.
It has not been sued by any other parties regarding its use of copper napthenate or its wood treatment process. None of its employees have complained of adverse effects relating to exposure to copper napthenate. Moreover, no members of the Komar family suffered any adverse physical effects as a result of the fence installation, nor did they hear complaints about adverse effects from anyone other than Temple.
 {¶ 33} In light of this undisputed evidence, Temple failed to establish that her injury was foreseeable and, consequently, that Ozark Timber owed her any duty. Accordingly, any claim for negligence against Ozark Timber necessarily fails as a matter of law.
2. Nuisance
 {¶ 34} Similarly, any attempted claim for nuisance against Ozark Timber must fail. Under Ohio law, nuisance is defined as the wrongful invasion of a legal right or interest. Taylor v.Cincinnati (1944), 143 Ohio St. 426, 436. "Nuisance" describes two separate fields of tort liability: public and private nuisance. Brown v. Scioto Cty. Board of Commissioners (1993),87 Ohio App.3d 704, 712.
 {¶ 35} A "public nuisance" is "an unreasonable interference with a right common to the general public." Id. "Unreasonable interference" includes:
 {¶ 36} "Those acts that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an effect of which the actor is aware or should be aware." Restatement of Law 2d, Torts (1965), Section 821(B)(1).
 {¶ 37} A public nuisance "does not afford a basis for recovery of damages in tort unless there is particular harm to the plaintiff that is of a different kind than that suffered by the public in general." Brown, supra, at 714. Thus, to recover under a claim of public nuisance, Temple must establish 1) an interference with a public right; and 2) that she suffered an injury distinct from that suffered by the public at large.Miller v. W. Carrollton (1993), 91 Ohio App.3d 291, 295-296.
 {¶ 38} Here, Temple has not established any interference with public health or safety. Rather, the evidence establishes that copper napthenate has been utilized in the wood industry for well over 100 years and Ozark Timber has not had any complaints of injuries as a result of working with this chemical. Further, Temple has not established that she suffered an injury distinct from that suffered by the public at large. Rather, Temple's complaint alleges that the installation and erection of the fence caused a nuisance to "various residents within the neighborhood" and several friends who visited her in her home. Accordingly, Temple has failed to establish a public nuisance.
 {¶ 39} Temple has also failed to produce evidence of a private nuisance, which is defined as a "nontrespassory invasion of another's interest in the private use and enjoyment of land."Brown, supra. In order to be actionable, the invasion must be either 1) intentional and unreasonable, or 2) unintentional and caused by negligent, reckless or abnormally dangerous conduct.
 {¶ 40} Temple produced no evidence that Ozark Timber's, or any other defendant's, conduct was intentional and unreasonable. Further, there is no evidence that Ozark Timber's, or any other defendant's conduct in installing a wood fence treated with a substance that has been used for over 100 years without complaint was negligent, reckless or abnormally dangerous.
 {¶ 41} A public or a private nuisance can be further classified as either an absolute nuisance (nuisance per se) or as a qualified nuisance. Taylor, supra, at paragraphs two and three of the syllabus. With an absolute nuisance, the wrongful act is so inherently dangerous that it cannot be conducted without damaging someone else's property rights, no matter the care utilized, and strict liability attaches notwithstanding the absence of fault because of the hazards involved. A qualified nuisance involves a lawful act "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." Id. at paragraph two of the syllabus. A qualified nuisance hinges upon proof of negligence. Id.
 {¶ 42} Temple has proven neither an absolute nor a qualified nuisance. There is no evidence that installation of a wood fence treated with copper napthenate is so abnormally dangerous that it cannot ever be performed safely. If that were so, the legislature would never allow any chemically treated wood fence to be installed. Further, because a qualified nuisance hinges upon proof of negligence, and Temple's negligence claim fails for lack of a duty, she cannot demonstrate a qualified nuisance. Accordingly, Temple's nuisance claim fails as a matter of law.
3. Recklessness
 {¶ 43} Temple also alleged a separate claim for "recklessness." Ohio does not recognize a separate cause of action for recklessness per se, however, in this context. Wenzelv. Al Castrucci, Inc. (June 18, 1999), Montgomery App. No. 17485. Temple's argument that Marchett v. Kalish (1990),53 Ohio St.3d 95, established the tort of recklessness is unavailing. In that case, the Ohio Supreme Court held that recklessness is a viable separate cause of action for an injured player in a sporting event when another player recklessly injures the plaintiff. The court did not extend its recognition of recklessness as a cause of action to any other situation, however. Because there is no cause of action in this state for recklessness per se, Temple's claim fails as a matter of law.
 {¶ 44} Moreover, Temple's argument that Ozark was reckless stems from its alleged failure "to [not] register its product with the EPA in violation of federal law." Ozark Timber is not required, however, to register its wood product with the EPA. The EPA registration requirement for copper napthenate is the duty of ISK Biocides, the distributor of Perm-E8%, who has complied with the registration requirements.
4. Fraud
 {¶ 45} With respect to her fraud claim, Temple alleged in her complaint as follows:
 {¶ 46} "19. Defendant, Ozark Timber, in its literature warranted to the world that the fence was safe. Defendants, Alan J. Komar and Gloria M. Komar, justifiably relied on such representation to put in the fence.
 {¶ 47} "20. Said reliance was the reason that the fence was able to be installed and erected.
 {¶ 48} "21. Such representations were false, were known to be false when made, and were reasonably relied upon by others tothe detriment of the Plaintiff.
 {¶ 49} "22. As a result of said misrepresentation and fraud, Plaintiff was permanently injured.
 {¶ 50} "23. Further, after complaining of initial problems that might have been related to the fence, Defendants ISK Biocides and EA Group Laboratories, a testing company, represented the fence was safe and acceptable.
 {¶ 51} "24. Such representation was false, known to be false when made, and relied upon by the Plaintiff both in terms of her health and safety, and in foregoing filing any claim." (Emphasis added.)
 {¶ 52} Thus, with respect to Ozark Timber, Temple's fraud claim is that the Komars relied on literature disseminated by Ozark Timber about its wood fence, to her detriment. A party is unable to maintain an action for fraud, however, where the fraudulent representations were not made directly to him to induce him to act on them in matters affecting his own interest.Marbley v. Metaldyne Co., Summit App. No. 21377, 2003-Ohio-2851, at ¶ 26. See, also, Wells v. Cook (1865), 16 Ohio St. 67, at the syllabus. "A plaintiff fails to state a valid cause of action [for fraud] when he alleges that a third party relied on misrepresentations made by a defendant and that he suffered injury from that third party's reliance." Marbley,
supra, quoting Hahn v. Wayne Cty. Children Services (May 9, 2001), Wayne App. No. 00CA0029. Accordingly, because Temple did not rely on any representations by Ozark Timber, her fraud claim fails as a matter of law.
 {¶ 53} Because we find that each of Temple's four claims against Ozark Timber fail as a matter of law, we hold that the trial court properly granted summary judgment in favor of Ozark Timber.
 TEMPLE'S CLAIMS AGAINST EA GROUP {¶ 54} In January 1999, after Temple complained of various ailments as a result of the Komars' fence, Alley Associates hired EA Group, a consulting firm and laboratory specializing in environmental health and safety with 17 years of experience, to conduct an investigation and environmental sampling at Temple's residence. In February 1999, three months after the fence was installed, an EA Group certified industrial hygienist conducted a walkover inspection of Temple's property, collected air monitoring samples near the fence and inside her residence, and tested for copper, arsenic and toxic organic compounds. The hygienist also took wipe samplings from inside Temple's home and tested for copper and arsenic.
 {¶ 55} When the industrial hygienist inspected Temple's home, he observed that the one-story brick residence was constructed in the 1930's and may have at one time had a coal- or oil-burning furnace. The interior surfaces "appeared smeary and an oily substance was on the cupboards." He opined that "it is unlikely the residue originated from the fence." Although the hygienist noted a "creosol-like" odor outside the residence when he left that day, he thought it possible that a neighbor was burning wood or coal and determined that "this odor was not coming from the recently installed fence." The hygienist analyzed the air in the kitchen and near the fence for arsenic and copper but found no detectable levels of either substance.
 {¶ 56} The subsequent laboratory analysis of the samplings taken by the hygienist indicated that no detectable concentrations of arsenic were found in any of the sampling locations, although small amounts of copper were found. The report concluded that copper is a normal constituent of the earth's crust, so its presence is not unusual, and opined that the levels found were within the acceptable range. In light of the observations of the industrial hygienist and the laboratory analysis, the report determined that "there is no conclusive evidence showing a link between the existence of the fence and the symptoms exhibited."
 {¶ 57} Alley Associates forwarded EA Group's report to ISK Biocides, which then sent the report to Temple, who immediately prepared and sent an eight-page, single-spaced, point-by-point rebuttal of the report to EA Group. Alley Associates then hired EA Group to provide a point-by-point response to Temple's letter.
 {¶ 58} In her deposition, Temple admitted that she did not hire EA Group nor contract with it to perform an environmental evaluation of the purported contamination in her home. She further admitted that she "did not disagree with the test results"; she disagreed with EA Group's opinion that there was no conclusive evidence to establish a link between the fence and her various ailments. Temple also admitted that she did not rely on anything contained in the initial EA Group report or in its responsive report to her rebuttal. She specifically stated, "Of course I wouldn't rely upon any errors he made in the report."
 {¶ 59} Temple's claim, as it relates to EA Group and as set forth in her brief in opposition to EA Group's motion for summary judgment, is that:
 {¶ 60} "EA Group's testing battery and interpretation of the testing is at issue in this lawsuit as it depicts negligence, fraud and recklessness and enabled a nuisance to continue. Unfortunately, many non-professionals and agencies, not learned in the area of chemistry, relied on the incomplete and inaccurate EA Group report, which was inadequate to show the existing link between the fence and the numerous contamination problems occurring in Plaintiff's home and severely impacting her health."
 {¶ 61} As an initial matter, we note that, despite Temple's arguments to the contrary, she did not assert claims for negligence, recklessness, and nuisance against EA Group. As discussed earlier, Temple alleged that "the installation and erection of the fence" constituted negligence, nuisance and recklessness. It is undisputed that EA Group did not erect or install the fence. Temple's claims of negligence, nuisance and recklessness are therefore not applicable to EA Group.
 {¶ 62} The only claim asserted against EA Group by Temple is for fraud. An action in common-law civil fraud has five essential elements: 1) a material false representation or a concealment, 2) knowingly made or concealed, 3) with the intent of misleading another into relying upon it, 4) justifiable reliance upon the representation or concealment by the party claiming injury, and 5) injury resulting from the reliance. McClintock v. Fluellen,
Cuyahoga App. No. 82795, 2004-Ohio-58, at ¶ 21, citing Gaines v.Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55.
 {¶ 63} Temple cannot establish her claim for fraud against EA Group, however, because she admitted that she did not rely upon the EA Group report. Instead, Temple's fraud claim is that otherentities relied on EA Group's report to her detriment. Indeed, she testified:
 {¶ 64} "They [city officials, the Board of Health, and the EPA] had the official power to do something about the problem, to have the fence sealed or to have it removed or any number of solutions.
Because they were told nothing was wrong with the fence, they couldn't very well go and order something sealed if nothing was wrong with it. It's as simple as that. It tied their hands from helping me."
 {¶ 65} As noted earlier, however, a plaintiff fails to state a cause of action for fraud where she claims that a third party relied on representations and she suffered injury as a result of those representations. Marbley, supra, 2003-Ohio-2851, at ¶ 26.
 {¶ 66} Because Temple admitted that she did not rely on the EA Group report, her fraud claim fails as a matter of law. Accordingly, the trial court did not err in granting summary judgment in favor of EA Group.
 TEMPLE'S CLAIMS AGAINST ISK BIOCIDES {¶ 67} The record reflects that ISK Biocides is in the business of distributing Perm-E8%, a wood preservative made up of copper napthenate and mineral spirits. It is not in the business of treating wood, selling wood, or erecting and installing fences, and it did not engage in any of those activities as pertinent to this case. Consequently, because Temple's claims for negligence, nuisance, and recklessness as pled in her complaint all relate to the "installation and erection of the fence," they are not applicable to ISK Biocides.
 {¶ 68} Temple attempts to assert these claims against ISK, however, by arguing in her brief in opposition to ISK Biocide's motion for summary judgment that ISK did not properly register its product with the EPA in violation of the Federal insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 et seq. ("FIFRA"), and failed to warn her of the dangers of the chemical. She argues further that the label for Perm-E8% is inaccurate.
 {¶ 69} Pursuant to FIFRA, the Administrator of the EPA shall register a pesticide if he determines, among other factors, that it "will perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C. § 136(a)(c)(5)(c). "Unreasonable adverse effects on the environment" is defined as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(b)(bb). With respect to labeling, regulations promulgated by the EPA address the design and content of the label, see40 C.F.R. § 156.10, and further require that the final printed label must be submitted before registration. Labeling is approved by the Administrator only if it is determined that the label is "adequate to protect the public from fraud and from personal injury and to prevent unreasonable adverse effects on the environment." 40 C.F.R. § 156.10(i)(1)(i).
 {¶ 70} The uncontroverted evidence in the record demonstrates that ISK Biocides properly registered Perm-E8% with the EPA under Registration Number 1022-528-50534. Further, ISK Biocides furnished an EPA-approved label for Perm-E8%, as well as an MSDS for Perm-E8% showing the registration number as approved by the EPA. Thus, Temple's claim that ISK Biocides failed to register or properly label its product is without merit.
 {¶ 71} Moreover, Temple failed to present any evidence that ISK Biocides had any duty to provide more specific warnings to her than those approved by the EPA simply because she is hypersensitive to certain chemicals or that it was even aware of her MCS condition prior to installation of the fence. Without a duty, any negligence claim necessarily fails.
 {¶ 72} Because Temple's negligence, nuisance, and recklessness claims fail as a matter of law, the trial court properly granted summary judgment in favor of ISK Biocides regarding these claims.
 {¶ 73} With respect to Temple's fraud claim against ISK Biocides, Temple argues that ISK is liable for the alleged misrepresentations in EA Group's report. As discussed earlier, however, Temple admitted that she did not rely on the report. Without such reliance, Temple's fraud claim necessarily fails. Therefore, the trial court did not err in granting summary judgment to ISK Biocides on the fraud claim.
 TEMPLE'S CLAIMS AGAINST FENCE ONE {¶ 74} Despite Temple's claims to the contrary, she did not allege fraud against Fence One in her complaint. Moreover, as discussed above, recklessness is not recognized as a separate cause of action in Ohio. Accordingly, we address only Temple's claims of nuisance and negligence with respect to Fence One.
 {¶ 75} Initially, we note that Temple does not find any fault with the manner in which Fence One installed the fence. Rather, the fact that the chemically-treated fence exists, regardless of any fault in its construction, is the basis of her nuisance claim.
Temple's nuisance claim against Fence One fails, however, for the same reasons her nuisance claim against the other defendants fails: she has failed to establish that the fence is a public or private, absolute or qualified nuisance.
 {¶ 76} Temple's negligence claim against Fence One is similarly not premised on the installation of the fence, but on her claim that the chemically treated fence is an inherently dangerous product for which all defendants owed her a duty to warn. As with the other defendants, Temple has failed to establish that Fence One had any duty to warn her of anything relating to the fence. The Komars, not Temple, contracted with Fence One for installation of the fence. There is no evidence in the record to show that Fence One was on notice of any defect in the lumber that it used to install the fence. There is similarly no evidence that chemically treated lumber is by its very nature defective or inherently dangerous. Likewise, Temple produced no evidence that Fence One had knowledge prior to installation of the Komars' fence of any complaints or injuries involving the treated wood or that Temple was hypersensitive to certain chemicals. Accordingly, Temple has failed to demonstrate that Fence One owed her any duty of care in its installation of the Komars' fence.
 {¶ 77} Because Temple's claims against Fence One fail as a matter of law, the trial court did not err in granting summary judgment in favor of Fence One.
Affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Rocco, J., concur.
[1] Moreover, despite defendants' strenuous objection to the expert reports, the record reflects that prior to withdrawing from the case, Temple's counsel faxed the expert reports to each of the defendants on May 14, 2004, the court-ordered deadline.