[Cite as *Lantz v. Smith*, 2025-Ohio-2464.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHAD LANTZ, et al. | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiffs - Appellees | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| MARY E. SMITH, et al. | : | Case No. 2024-CA-00164 |
| | : | |
| Defendants - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Massillon Municipal
                                 Court, Case No. 2024-CVI-776

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                July 10, 2010

APPEARANCES:

For Defendants-Appellants

D. Coleman Bond
116 Cleveland Avenue N.W., Suite 600
Canton, Ohio 44702

*Gormley, J.*

**{¶1}** Appellants Mary E. Smith and Richard A. Smith appeal the judgment of the Massillon Municipal Court overruling their objection to a magistrate's decision and adopting the magistrate's recommendation that they be held liable for the damage that squirrels caused to the property of their next-door neighbors Chad and Christyn Lantz. Although the Smiths contend that they did nothing wrong by consistently feeding wildlife on their own property, we agree with the trial court's determination that the Smiths, by continuing to feed the animals even after having been found liable to their neighbors once before for the same conduct, did create a private nuisance for which they could again be found liable.

## Facts and Procedural History

**{¶2}** The Lantzes and the Smiths are neighbors who reside on Chippewa Avenue in Stark County's Jackson Township. The Smiths regularly feed wildlife — including birds, squirrels, and deer — on their property.

**{¶3}** On March 10, 2024, Christyn Lantz was in her home when she heard a thud in her garage. She then stepped into the garage and saw a squirrel on the hood of her vehicle. The squirrel promptly jumped down and climbed underneath the car. When Christyn and her husband opened the hood of the vehicle, a peanut fell out. The Lantzes then discovered that the squirrel had been scratching and burrowing underneath the hood and had chewed several wires. The Lantzes also discovered damage to the garage door where the squirrel had tried to chew its way out of the garage. In addition, the Lantzes sustained damage to their mailbox from animals chewing through it.

**{¶4}** The Lantzes filed a small-claims complaint against the Smiths in the Massillon Municipal Court in March 2024, alleging that the Smiths' feeding of wildlife in the residential neighborhood had led directly to the damage done by the squirrels to the Lantzes' vehicles and other property.

**{¶5}** After a bench trial on the matter, a magistrate issued a decision finding that the Smiths had maintained a private nuisance on their property and that they should be found liable for the damage done to the Lantzes' vehicle and mailbox as well as the costs incurred by the Lantzes for items that they bought in an effort to deter wildlife from harming their property in the future. The Smiths filed an objection to the magistrate's decision, but the trial judge overruled that objection and adopted the magistrate's decision as the judgment of the court. The Smiths now appeal.

## The Trial Court Applied the Correct Standard of Review

**{¶6}** In their first assignment of error, the Smiths contend that the trial court applied an incorrect standard of review when it considered their objection to the magistrate's decision. In its one-page judgment entry, the trial court said this: "Upon review of the Defendant's Objection, and a further review of the facts of this case from which the Court has made its independent analysis thereof, and for further good cause shown, the Court hereby finds that the Magistrate's decision is neither an abuse of discretion nor contrary to law."

**{¶7}** "The trial court is obliged to independently review the issues upon objections to a magistrate's ruling." *Phillips v. Phillips*, 2014-Ohio-5439, ¶ 25 (5th Dist.). Civ.R. 53(D)(4)(d) requires that the trial court conduct "an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual

issues and appropriately applied the law." The trial court's standard of review of a magistrate's decision is, therefore, de novo. *Phillips* at ¶ 26.

{¶8} The Smiths contend that because the trial court found no abuse of discretion in the magistrate's decision, the trial court applied an incorrect standard of review. Despite the trial court's inartful choice of words, the trial judge did also state that he had reviewed the facts and had conducted his own independent analysis of the case. "'[I]n the absence of an affirmative demonstration the trial court applied an incorrect standard, given the presumption [of] regularity, we presume the trial court applied the correct standard.'" (Bracketed text in original.) *Id*. at ¶ 27, quoting *Rudduck v. Rudduck*, 1999 WL 436818, *4-5 (5th Dist. Jun.16, 1999) (finding that even though the trial court did not explicitly state the burden that it applied, that court did indicate that it found that the magistrate's decision was supported by competent and credible evidence, and the court of appeals found sufficient evidence in the record for the trial judge to have found that the required burden of proof had been met).

{¶9} We presume that the trial court reviewed the facts of this case and engaged in the necessary independent analysis of it, as the trial court's judgment entry states. We, therefore, conclude that the trial court applied the correct standard of review in overruling the Smiths' objection to the magistrate's decision.

**The Trial Court's Decision Was Not Against the Manifest Weight of the Evidence**

{¶10} In their second assignment of error, the Smiths argue that the magistrate's decision, which was adopted by the trial court, was against the manifest weight of the evidence.

**{¶11}** The standard of review for manifest weight of the evidence in a civil case is the same standard applied in criminal cases. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. "A reviewing court is to examine the entire record and determine 'whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *Lambert's Pop A Top, LLC v. Mills*, 2017-Ohio-8073, ¶ 32 (5th Dist.), quoting *Eastley* at ¶ 20.

**{¶12}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland,* 10 Ohio St.3d 77, 80, (1984). If a civil judgment is supported by "some competent, credible evidence support[ing] all the essential elements of the case," it will not be reversed as being against the manifest weight of the evidence. *Huntington Natl. Bank Successor v. Miller*, 2016-Ohio-5860, ¶ 13 (10th Dist.), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).

**{¶13}** The Smiths first contend that the magistrate's — and ultimately, the trial judge's — finding of an absolute nuisance was against the manifest weight of the evidence because there was no evidence to support the magistrate's finding that the Smiths' actions were intentional.

**{¶14}** Common-law nuisance is defined as "the wrongful invasion of a legal right or interest." *Taylor v. City of Cincinnati*, 143 Ohio St. 426, 431–432 (1944). A nuisance

is designated as either public or private. A public nuisance "covers the invasion of public rights, *i.e.*, rights common to all members of the public." *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 712 (4th Dist. 1993). A private nuisance "covers the invasion of the private interest in the use and enjoyment of land." *Id*.

{¶15} Nuisance is further characterized as either "absolute" or "qualified." A private absolute nuisance involves conduct that is "intentional and unreasonable." *Kramer v. Angel's Path, LLC*, 2007-Ohio-7099, ¶ 17-19 (6th Dist.). See also *Davis v. Widman*, 2009-Ohio-5430, ¶ 21 (3d Dist.) ("For a private nuisance to be actionable, the invasion must be either (1) intentional and unreasonable or (2) unintentional but caused by negligent, reckless, or abnormally dangerous conduct"); *id.* at ¶ 22 ("absolute nuisance" is "based on intentional conduct").

{¶16} "Intentional, in this context, means not that a wrong or the existence of a nuisance was intended but that the creator of it intended to bring about the conditions which are in fact found to be a nuisance." *Amore v. Ohio Turnpike Comm.*, 2011-Ohio-1903, ¶ 12 (9th Dist.) (citation and brackets omitted). *See also Nottke v. Norfolk S. Ry. Co.*, 264 F.Supp.3d 859, 863 (N.D.Ohio 2017) (same).

{¶17} And an analysis of whether a nuisance defendant's conduct was unreasonable requires the court to "balance the gravity of the harm caused by the interference [to the plaintiff's private use and enjoyment of his or her land] against the utility of the interferer's conduct." *Aeh v. Madison Twp. Trustees*, 2004-Ohio-2181, ¶ 17 (4th Dist.). *See also Soukoup v. Republic Steel Corp.*, 78 Ohio App. 87, 103 (8th Dist. 1946) ("An intentional invasion of another's interest in the use and enjoyment of land

is unreasonable . . . unless the utility of the actor's conduct outweighs the gravity of the harm") (quotations omitted).

{¶18} In contrast to an absolute nuisance, a qualified nuisance "is premised on negligence, and consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm which, in due course, results in injury to another." *Little Hocking Water Assn., Inc. v. E.I. du Pont Nemours and Co.*, 91 F.Supp.3d 940, 971 (S.D.Ohio 2015) (quotations and brackets omitted).

{¶19} "If the cause of action is based upon absolute nuisance, it is unnecessary to plead or prove negligence; on the other hand, if the cause of action is based upon qualified nuisance, negligence must be alleged and proven." *Metzger v. Pennsylvania, O. & D. R., Co.*, 146 Ohio St. 406, 412 (1946). Both public and private nuisances can be either absolute or qualified. *Brown*, 87 Ohio App.3d at 713.

{¶20} In an action for nuisance, "the injury must be real, material, and substantial." *Banford v. Aldrich Chem. Co., Inc.,* 2010-Ohio-2470, ¶ 17. "Damages for nuisance may include diminution in the value of the property, costs of repairs, loss of use of the property, and compensation for annoyance, discomfort, and inconvenience." *Id.*

{¶21} At the trial, undisputed testimony indicated that Richard Smith put out food on his property. Mr. Smith testified that he owns three bird feeders and that he fills them as needed. Mr. Smith also testified that he feeds the squirrels on his patio peanuts that have been peeled and split, and he feeds the deer loose corn under a big pine tree on his property. Mr. Smith acknowledged that in the wake of an earlier nuisance suit brought against him by the Lantzes, he no longer feeds the squirrels peanuts in a shell, opting now instead to provide the spilt and peeled peanuts to them daily.

{¶22} Because there was no evidence presented at the trial that any other property, individuals, or the general public were impacted by the Smiths' feeding of wildlife, the trial court properly found that the Smiths' actions could not be characterized as a public nuisance.

{¶23} Yet despite knowing that putting out food for wildlife had interfered with his neighbors' enjoyment of their property in the past, Mr. Smith chose to continue to engage in that conduct daily. The magistrate found that the conduct was intentional and unreasonable — that is, that the Smiths intentionally continued to feed wild animals despite knowing that those animals were causing annoyance to their neighbors and damage to those neighbors' property — and therefore constituted an absolute private nuisance.

{¶24} The Smiths contend that their conduct cannot be held to be intentional or unreasonable because there is no evidence in the record about any prior judgment against them in favor of the Lantzes. Though the Smiths rightly note that no exhibits were admitted at the trial concerning the prior judgment, both the trial court and the parties acknowledged and referred to that judgment during the trial.

{¶25} At the beginning of the trial, the magistrate read the Lantzes' latest complaint into the record. In it, the Lantzes alleged that this was their second complaint against the Smiths, and the second complaint notes the case number of the first case. The newer complaint alleged that the Smiths continue to feed wildlife in the residential neighborhood, that they have not changed their previous behavior, and that animals continue to damage the Lantzes' property and vehicles.

**{¶26}** The magistrate stated that she remembered the first case, which she presided over, and she recalled that the Smiths had been found liable to the Lantzes in that one for creating a nuisance by feeding wild animals. The magistrate explained to the Lantzes — who were unrepresented at the second trial — that even though this case might involve similar conduct to that involved in the first case, the Lantzes had an obligation to present testimony or evidence regarding new actions or activity that they believed substantiated their claim for damages in this case. The Smiths' counsel at the second trial did not object to the magistrate's statements about the prior case or cry foul when witnesses mentioned it during the trial, and the Smiths did not argue at the second trial that the earlier judgment was invalid or suggest that the magistrate ought not consider it when evaluating the evidence at that second trial.

**{¶27}** During his testimony, Mr. Smith stated that he continues to put out food on his property for wildlife every day, indicating that the only change that he has made since the issuance of the prior judgment has been to halt his prior practice of putting out peanuts in the shell and to substitute instead as part of his daily routine a practice of providing peeled and split peanuts to the squirrels. This admission by Mr. Smith that he has continued to feed the squirrels despite having been found in the earlier case to have created a nuisance by doing so provided support for the magistrate's finding that the Smiths' conduct is intentional and unreasonable.

**{¶28}** The Smiths purposely — as opposed to accidentally — fed the squirrels and other wild animals on their property (thereby acting intentionally), and trial testimony supported a finding by the magistrate that despite whatever social benefit or personal enjoyment the Smiths might have gained from their conduct, that utility of their conduct to

them did not outweigh the evident harm that that conduct had caused and was continuing to cause to the Lantzes (thereby making the conduct unreasonable).

**{¶29}** The Smiths also contend that no causal connection was shown at the trial between their conduct and any harm suffered by the Lantzes. Certainly, as the Smiths rightly note, their creation and maintenance of a nuisance is not, standing alone, sufficient to establish their liability to others for that conduct. "It must also be shown by the evidence that the injury incurred was the proximate result of the maintenance of such nuisance." *Gaines v. Village of Wyoming*, 147 Ohio St. 491, 498 (1947).

**{¶30}** "Proximate causation has been described as 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 618 (1995), quoting Prosser & Keeton, *The Law of Torts* 263, § 41, at 263 (5th Ed.1984). "An act is a proximate cause of an injury when the injury sustained is the natural and probable consequence of the act." *Bethel Oil & Gas, LLC v. Redbird Dev., LLC*, 2024-Ohio-5285, ¶ 64 (4th Dist.) (quotations omitted).

**{¶31}** In the proximate-cause context, the term "probable" does not mean "more likely than not" but means instead "not unlikely' or "such a chance of harm as would induce a prudent man not to run the risk." *Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 340 (1934). And, of course, an injury "may be the result of more than one proximate cause." *Zavinski v. Ohio Dept. of Transp.*, 2019-Ohio-1735, ¶ 29 (10th Dist.).

**{¶32}** To be sure, the Lantzes offered no evidence that any particular squirrel that benefited from the Smiths' daily feedings caused the harm that the Lantzes experienced. But the trial testimony indicated that the Smiths, having already been found liable for

creating and maintaining a private nuisance by feeding wildlife, continued to engage in that conduct. And testimony showed, too, that the Lantzes suffered harm that was caused by one or more squirrels. That evidence supported a finding in the trial court that the chance of continued harm that would likely flow from the ongoing feeding ought to have been enough to prompt the Smiths — who are presumably prudent people — to refrain from the conduct that had created a nuisance once before in their neighborhood. At the trial, in short, a sufficient causal connection was shown between the Smiths' conduct and the harms alleged by the Lantzes.

{¶33} And the Lantzes were not required to prove that any particular duty of care was owed to them by the Smiths or that the Smiths breached that duty. *See In re Natl. Prescription Opiate Litigation*, 477 F.Supp.3d 613, 632, fn. 30 (N.D.Ohio 2020) ("An absolute nuisance can . . . be based on nonculpable conduct by the defendant that results in accidental harm for which, because of the hazards involved, the law imposes strict or absolute liability notwithstanding the absence of fault") (quotations omitted); *City of Cincinnati v. Deutsche Bank Natl. Trust Co.*, 863 F.3d 474, 477 (6th Cir. 2017) ("A qualified public nuisance mirrors a negligence tort," and "requires the plaintiff to show duty, breach, causation, and injury"); *Davis v. Widman*, 2009-Ohio-5430, ¶ 22 (3d Dist.) ("Strict liability is imposed upon an absolute-nuisance finding"). Because the Lantzes' cause of action was based on absolute nuisance, it was unnecessary for them to plead or prove negligence.

{¶34} Although the Smiths are entitled to use their property for any purpose that they see fit, they are bound to use their property "in such a manner as not to annoy, injure, or endanger the comfort, health, or safety of [their] neighbor[s]." *Morgan v. Carlson*, 1987

WL 9474, *3 (9th Dist. Apr. 8, 1987). "The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances." *Antonik v. Chamberlain*, 81 Ohio App. 465, 476 (9th Dist. 1947). As the court in *Morgan* noted, "[i]t is a difficult task for the trial court to determine where to draw the line," as "[a] nuisance is a question of degree, depending on the particular circumstances of the case." 1987 WL 9474 at *3. In this case, the trial court determined that the Smiths intentionally continued feeding wildlife despite knowing that the Lantzes were suffering damage to their property from the wildlife.

**{¶35}** After reviewing the record in this case, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. We, therefore, find that the trial court's judgment was not against the manifest weight of the evidence.

## The Trial Court's Decision Was Supported By Sufficient Evidence

**{¶36}** In their third assignment of error, the Smiths argue that the magistrate's decision, which was adopted by the trial judge, was not supported by sufficient evidence.

**{¶37}** In a civil case, the plaintiff's burden of persuasion is the preponderance-of-the-evidence standard. *Eastley*, 2012-Ohio-2179 at ¶ 19. But "evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id*. "When a defendant argues that the judgment in a civil case is supported by insufficient evidence, we must determine whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable trier of fact could find in favor of the plaintiff." *Lubanovich v. McGlocklin*, 2014-Ohio-2459, ¶ 8 (9th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶38}** What were the elements of the common-law nuisance tort that the Lantzes set out to prove? The classic Restatement of the Law on Torts offers a straightforward reminder: "One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is . . . intentional and unreasonable." 4 Restatement of the Law 2d, Torts, § 822 (1979).

**{¶39}** The Smiths first argue that the Lantzes failed to present sufficient evidence of proximate or legal cause. As we addressed above, though, evidence was offered indicating that it was not unlikely that one or more well-fed squirrels made the short trip from the Smiths' patio to the Lantzes' garage and mailbox and that that squirrel or those squirrels caused the harm that the Lantzes described at the trial. Certainly, when the evidence is viewed in a light most favorable to the Lantzes, we cannot say that they failed to provide sufficient evidence of a causal connection between the Smiths' conduct and the Lantzes' injuries.

**{¶40}** The Smiths argue, too, that the Lantzes failed to present sufficient evidence of intentional and unreasonable conduct on the part of Smiths. The evidence that was presented, however, established that the Lantzes brought a prior suit against the Smiths for similar conduct and that, therefore, the Lantzes were aware that their actions were interfering with "the use and enjoyment of the property of another." *Taylor*, 143 Ohio St. at 440. Despite acknowledging this, the Smiths continued to consistently feed wildlife on their property.

**{¶41}** Chad and Christyn Lantz were of course not required to show that the Smiths acted with an intent to cause harm. Rather, the Lantzes, to prove intent, needed

only to show that the feeding was occurring purposely rather than accidentally. Mr. Smith's own testimony in fact demonstrated that he acted intentionally, and the Smiths' maintenance of the nuisance even after they were found liable once before supports our conclusion that the Lantzes offered at least some evidence about the unreasonableness of the Smiths' conduct.

{¶42} Having read the record in this case, we find, when viewing the evidence in a light most favorable to the Lantzes, that the trial court could reasonably have concluded that the Lantzes met their burden of proof on each element of their absolute-nuisance claim.

{¶43} For the reasons explained above, we affirm the judgment of the Massillon Municipal Court.


By: Gormley, J.

Montgomery, J. concurs.

King, P.J. dissents.

*King, J. dissents,*

**{¶44}** I agree with the majority that the focus of our review under a private absolute nuisance is unreasonableness. But I disagree that plaintiffs here proved that the wildlife feeding here amounted to an absolute nuisance.

**{¶45}** The Supreme Court held the following: "An absolute nuisance is based on either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken." *State ex rel. R.T.G., Inc. v. State*, 2002-Ohio-6716, ¶ 59. We have previously defined absolute nuisance as this: ". . . [N]o matter how careful one is, such activities are inherently injurious and cannot be conducted without damaging someone else's property or rights." *Hupp v. Nelson*, 2003-Ohio-255, ¶ 33 (5th Dist.). Because of dangers usually inherent in the activities potentially giving rise to an absolute nuisance, the law imposes strict liability on the tortfeasor. *Taylor v. City of Cincinnati*, 143 Ohio St. 426 (1944).

**{¶46}** In *Hupp*, like many of the other court of appeals districts of the state, we opted to follow Restatement of the Law 2d, Torts, § 822 (1979). *See, e.g., Pietrangelo v. PolyOne Corp.,* 2021-Ohio-4239, ¶ 45 (9th Dist.); *Ogle v. Ohio Power Co*., 2008-Ohio-7042 (4th Dist.); *Temple v. Fence* One, Inc., 2005-Ohio-6628, ¶ 36 (8th Dist.); and *Uland v. S.E. Johnson Companies*, 1998 WL 123086, *5 (6th Dist.).

**{¶47}** So too has the Supreme Court of Ohio followed the approach the Second Restatement takes regarding nuisance. *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 8 (addressing public nuisance).

**{¶48}** The Second Restatement describes the cause of action thusly: "One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an

invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." Restatement of the Law 2d, Torts, § 822 (1979).

{¶49} The Second Restatement then goes on to define both what is an intentional invasion (§ 825) and which intentional invasions are unreasonable (§ 826). To begin with, the Restatement makes an important connection with the action and the invasion: "An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor (a) acts for the purpose of causing it, or (b) knows that it is resulting or is substantially certain to result from his conduct." Restatement of the Law 2d, Torts, § 825 (1979).

{¶50} As the illustrations make clear, the tortfeasor is required to have knowledge that the conduct will invade the use and enjoyment of another's land. Here, it can be fairly said that defendants knew that providing food for wildlife would attract them to their property. The record here does not support the conclusion that this conduct arises under Section 825(a). For example, if defendants were using food to attract rodents or dangerous animals to plaintiffs' property to harass them, then it would indeed be an intentional invasion of plaintiffs' use and enjoyment of the land.

{¶51} Instead, it appears from the record that defendants' purpose in feeding wildlife was for their own enjoyment. Certainly, a reasonable person might anticipate that as the animals were attracted onto defendants' land, those animals might traverse their neighbor's property. But I cannot say that the increased presence of wildlife on the

plaintiffs' property is always sufficient to sustain a private nuisance claim under subsection (b).

**{¶52}** It appears from the record that the plaintiffs live in a residential suburban neighborhood. I will certainly concede that attracting certain types of wildlife could interfere with a person's use and enjoyment of their residential land. Attracting bears, wolves, coyotes, and other dangerous wildlife into a residential area would represent such an interference. Likewise, a landowner attracting vermin to their property is another actionable interference. But here the complaint revolves around damage done by squirrels. And squirrels are ubiquitous in most residential areas in the state, and they are well adapted to that habitat. Thus, I cannot say that, as a matter of law, this feeding of squirrels amounted to an intentional invasion of plaintiffs' use and enjoyment of their land.

**{¶53}** But even if I were to conclude that such a conduct was an intentional invasion, I would also conclude that this conduct was not unreasonable. Section 826 sets forth this standard: "An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if (a) the gravity of the harm outweighs the utility of the actor's conduct, or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible." Restatement of the Law 2d, Torts, § 826 (1979). My focus here is under subsection (a).

**{¶54}** The harm complained of here is mostly that of annoyance. Plaintiffs did point to two instances of property damage allegedly caused by squirrels, which will be addressed next. But on balance, they are unhappy with what they perceive as an increased presence of squirrels and birds due to the defendants' feeding. This does not

rise to the level of significant harm required. *See Id*., comment d, and § 821(F); s*ee also Banford v. Aldrich Chem. Co.*, 2010-Ohio-2470, ¶ 28 ("[W]e hold that in order to recover damages for annoyance and discomfort in a nuisance claim, a plaintiff must establish that the nuisance caused physical discomfort").

**{¶55}** If we suppose the property damage suffered indeed qualifies as a "significant harm," I believe that the damage complained about is simply too remote to sustain a nuisance claim. As mentioned above, squirrels are common in residential neighborhoods. The only real evidence in the record to connect the squirrels' mischief to the defendants feeding them is a single peanut shell found near a chewed wire.

**{¶56}** But that is not enough to say that providing peanuts for wildlife caused the guilty squirrel to enter the garage, wiggle into the engine compartment with its loot, and then chew a wire in between nibbles on the peanut. A wild squirrel here did what wild squirrels sometimes do; the animal's act of chewing on the wire was neither induced nor encouraged by the availability of peanuts. Nor can we say that the squirrel was only in the area because of the availability of peanuts. In fact, its decision to chew on the wire after dining on the peanuts is unexplained and independent of visiting the feeder provided by the defendants. I would therefore sustain the second and third assignments of error and reverse the trial court's finding of private nuisance.